HILL AND OTHERS *vs.* MEEKER.

A deed of land, not recorded, until after the death of the grantor, is valid against a purchaser from his heir at law, although such purchaser has no knowledge of the existence of the deed.

In the year 1794, M gave a deed of land to H, who in the year 1800, deeded the same land to E, the daughter of H, and the wife of M. M continued in possession until 1831, when he died, leaving A, his only son and heir at law. From the death of M, A occupied said land until 1840, when, to secure certain notes, he mortgaged the premises to the plaintiffs' ancestor, who had no knowledge of the existence of said deeds, to H and to E, and which remained unrecorded until 1850, when they were put on record, and E executed the deed, under which the defendants claimed title to the premises. Held, that A took nothing by inheritance, which he could convey, and that a *bona fide* purchaser, from him, who had no knowledge of said deeds to H and E, in an action of ejectment against the grantees of E, was not entitled to recover.

THIS was an action of ejectment, brought to the superior court for Fairfield county, by William H. Hill and others, against Francis Meeker, to which the defendants pleaded the general issue.

The plaintiffs, who were the children and heirs at law of John L. Hill, deceased, claimed title to the demanded premises by virtue of a mortgage deed, from Arza Meeker to

said John L., conditioned for the payment of two promissory notes, together amounting to $5,900.

By agreement of the parties, the finding of the committee, appointed by the court in the case of *Hill and others* v. *Meeker,* 23 Conn. R., 592, which was between the same parties, was made part of the record in the present case, so far as the same was applicable thereto.

The case was thereupon submitted to the superior court, and by that court was reserved for the advice of this court.

A statement of the material facts in the case is embraced in the report of the committee, appointed in the former case, and in the opinion of the court in the present case.

*Butler & Carter* and *Averill,* for the plaintiffs.

*W. F. Taylor* and *Ferry,* for the defendants.

HINMAN, J. In this action, the plaintiffs seek to recover two tracts of land, situated in Reading, which were deeded to their ancestor, John L. Hill, by a mortgage deed, executed December 4th, 1840, by Arza Meeker, to secure the payment of two notes, then due to the grantee, and now held by the plaintiffs, and which have not been paid. There is no controversy in respect to the title to most of the land demanded. But the dispute is confined to twenty acres, parcel of one of the tracts, to which the defendant claims that Arza Meeker never had any title, and consequently conveyed none, by his mortgage deed. The facts, respecting the title to this twenty acres, appear in the finding of the committee, appointed to find the facts, on a bill to foreclose the defendant's title to the same premises, which are demanded in this action. This finding, though made in another case, by the agreement of the parties, has been made a part of this case, so far as the facts thus found are applicable to it.

From this it appears, that Arza Meeker was the son and

only heir of Jonathan Meeker, who owned all the land men- tioned in the declaration, and in 1794, conveyed the twenty acres to Richard Hawley, and Hawley, in 1800, conveyed the same twenty acres to his daughter, who was the wife of said Jonathan, and the mother of Arza. These two deeds were not recorded till January, 1850 ; but had been kept in the exclusive possession of Mrs. Meeker, until her husband's death, in 1831, when she gave them to her son, Arza, to be recorded ; but he, without her knowledge, kept them in his possession till 1850, when they were taken to record. When Hill took his mortgage, he had no knowledge of the existence of these two deeds.

It is apparent from these facts, that the only question is, whether the unrecorded deed from Jonathan Meeker to Haw- ley, and the deed from Hawley to his daughter, so devested Jonathan of his title to the twenty acres, that, at his death, his son Arza took nothing, by inheritance, that he could convey, or mortgage to a *bona fide* purchaser, who had no knowledge of the deeds. The court are of opinion that they did so devest him of his title. We come to this opinion, from the language of the statute, requiring deeds to be recorded. By that statute, " all grants and deeds of bargain and sale, and mortgages of houses and lands, shall be recorded at length, by the register, or town clerk, of the town where such lands and houses are ; and no deed shall be accounted good and effectual to hold such houses and lands against any other person or persons, but the grantor or grantors, and their heirs, unless recorded as aforesaid." ₐ

Now, as it is by force of the statute alone, that deeds for any purpose are required to be recorded, it follows that they are as effectual without recording, as they were at common law, except so far as the statute has made them ineffectual. But, by the statute, they shall not be accounted good against any person but the grantor, or grantors, and their heirs. Of course, they remain good against the grantor and his heirs. Would the language have been any clearer, if it had

expressly said that unrecorded deeds shall be good and effectual against the grantor and his heirs, but void against all others? We can not think it would. Jonathan's deed, then, was good against him, he being the grantor; and it was good against Arza, his only heir, by force of the statute. But as it was good against Jonathan, he, at his death, had no title to transmit to his heir; and Arza, taking nothing by inheritance, had nothing that he could mortgage to Hill.

It is said, however, that Jonathan Meeker, during his life, and his son afterward, appeared to the world as the owners of the twenty acres; and that their attaching creditors could lĕvy upon the land, and that *bona fide* purchasers, without notice, under our recording system, might lawfully take a conveyance of it, and that they could hold it against Mrs. Meeker, who had neglected to cause her deeds to be recorded. So far as Jonathan Meeker's creditors, or *bona fide* purchasers, were concerned, this was true undoubtedly. He once had a good title, and the record did not show that he had, in any way, parted with it; and the statute says, expressly, that no deed shall be good against any other person than the grantor and his heirs, unless it is recorded. Creditors and *bona fide* purchasers of Jonathan, not being his heirs, would, therefore, hold the title which he once had, and which the record did not show that he had been devested of. But we think there is a clear distinction between a purchaser from him, and one from his heir, Arza. In relation to a purchaser from Arza, the difficulty is, that he never had any title. The statute does not operate to cast any title upon him, because his father's deed was not recorded, but the reverse, making the deed good against him, as his father's heir; and we do not see how his purchaser can acquire a title from him, which he never had. The object of the statute was to protect creditors and purchasers of the owners of land, from the effect of their grantors' unrecorded deeds. But to give it the effect of creating a title in an heir, when he never had any in

fact, is, we think, going further than the language, or the spirit, of the act will justify.

For these reasons, we advise the superior court, that the plaintiff is not entitled to recover the twenty acres, claimed by him.

In this opinion, STORRS, J., concurred,

WAITE, C. J. Jonathan Meeker, being the owner in fee of a farm of about one hundred and eighty acres, in the year 1794, executed a deed of twenty acres, parcel of the same, to Richard Hawley, who, in the year 1800, gave a deed of the same parcel to his daughter, Esther Meeker, the wife of Jonathan.

Meeker continued in possession of the whole, until the year 1831, when he died, leaving Arza Meeker, his only son and heir at law. Arza Meeker continued to occupy the farm, including the twenty acre tract, which had never been fenced off from the residue of the farm, until the year 1840, when he mortgaged the whole property to John L. Hill, to secure the payment of two promissory notes, amounting to nearly six thousand dollars.

The deeds to Hawley and Mrs. Meeker were never recorded, until the year 1850, when she executed a deed of the twenty acre tract to Frederick W. Meeker and the defendant, under which deed the defendant claims title. Hill had no knowledge of the existence of the two deeds to Hawley and Mrs. Meeker, when the mortgage to him was given. The plaintiffs derive their title from him, and the question submitted to us, is, which party has the better title to the twenty acre tract; the plaintiffs, by virtue of the mortgage to Hill, or the defendant, under the deed to Hawley.

The statute provides, that " all grants, and deeds of bargain and sale, and mortgages of houses and lands, shall be recorded at length, by the register or town clerk of the town, where such lands and houses are; and no deed shall be good

and effectual to hold such houses and lands, against any other person or persons, but the grantor or grantors, and their heirs, unless recorded, as aforesaid." Rev. Stat., p. 33.

This statute was very critically and carefully considered, nearly forty years ago, by the supreme court of errors of this state, in the case of *French* v. *Gray*, and the principles there established, have ever since been considered as settling the true construction of the statute, and the law applicable to unrecorded deeds. 2 Conn. R., 92.

A majority of the court there held, that a deed of land, unrecorded, is no evidence of title, and, as such, can not be produced in court, against any other person than the grantor and his heirs. "And" they say, that "such are the express words, and such has been the universal construction of the statute."

That, " until the deed is recorded, the fee in the land remains in the grantor, notwithstanding his deed; and any suit for the recovery of the land, from any person, other than the grantee, and those claiming under him, must be brought in his name; and a subsequent conveyance by him to a *bona fide* purchaser, without notice of the prior deed, who causes his deed to be first recorded, will pass the fee to him."

The reason why a subsequent purchaser, with notice, shall be postponed to the prior grantee, is founded upon his fraud in taking the conveyance. For that reason it is treated as void against the prior grantee.

In the case under consideration, it becomes necessary to consider only the effect and operation of the deed to Hawley, while it remained unrecorded, as that is the foundation of all the defendant's title, and if that fails, the whole superstructure falls. Hawley could convey no greater interest in the property to his daughter, than he acquired by virtue of his deed from her husband, the original owner.

Now the case cited conclusively shows, that so long as their deeds remained unrecorded, no title passed to either of them, and the fee of the land continued in Jonathan Meeker,

during his whole life. He alone could sustain an action for disseisin by a stranger, and he could convey to a *bona fide* purchaser, having no knowledge of his prior deed, an absolute and perfect title in fee. And so are all the authorities. And this, say the court in the case referred to, shows that the fee remained in him.

But if he owned the fee, so that he could convey a perfect title, what became of his interest when he died? It could not, upon any principle, pass to Hawley, were he living. Meeker's death could give no greater effect to his deed, executed more than thirty years previously, than it had when originally delivered.

But the answer to the question is obvious. All the right, title, interest and estate of Jonathan Meeker, upon his decease, by virtue of the law of inheritance, passed to his son, as his heir at law. The latter acquired that interest in, and power over, the property which belonged to the father.

Hence it follows, that any conveyance made, or mortgage given by the son, while Hawley's deed remained unrecorded, would stand precisely upon the same ground, as a conveyance, or mortgage, made by the father, in his lifetime. And according to all the authorities, had the mortgage to Hill been given by the father, it would have been perfectly good, as against Mrs. Meeker, and all persons claiming under her. And I am unable to see, why precisely the same effect is not to be given to the deed of the heir.

But even admitting that, after the deed to Hawley, the fee, strictly speaking, did not remain in Meeker, yet it can not be denied, that he retained such an interest in the property, by whatever name it may be called, as that he could give a valid mortgage, or convey an absolute estate in fee simple. The authorities upon this subject are all one way. What then became of that interest, upon his decease, unless it descended to his heir at law?

This court have repeatedly said, that it is the policy of our

law, that all conveyances of real estate, shall be made to appear on record, for the benefit of the parties and all others interested. The object is to prevent fraud, and give security and stability to title. And says Williams, C. J., " Our courts have ever considered it their duty to give such a construction to our statutes, as will continue this salutary protection." *Pettibone* v. *Griswold.*, 4 Conn. R., 158. *North* v. *Belden*, 13 Conn. R., 380.

So far as my researches have extended, this is the first case in the whole history of our jurisprudence, in which it has ever been holden, that an unrecorded deed shall defeat the title of a *bona fide* purchaser or mortgagee, having no knowledge of the existence of any such deed, unless it were recorded within a reasonable time.

There is nothing in the present case, calling for any particular sympathy, in favor of either the defendant or Mrs. Meeker. She suffers the deed from her husband, under which she claims title, to be kept from the records, for more than half a century; its existence, so far as the case shows, unknown to the world, with the exception of the parties, herself, and her son. During all this time, the husband and son continue in possession, with nothing indicating any title in her, except her right of dower in her husband's estate.

In the mean time, her son, being the heir of the person who had the record title, mortgages to Hill, a *bona fide* creditor to a large amount, having no knowledge of the existence of the deeds under which she claims title, and seeing nothing to awaken any suspicion upon that subject.

Some ten years after this mortgage was given, she causes her deeds to be recorded, and a conveyance to be made, to enable her son to carry out the fraud practiced upon Hill. In my opinion, neither she, nor the defendant, has any law or any equity upon their side. It is better, far better, that she should suffer by such gross negligence, than that, in the language of Chief Justice Williams, " the valuable provis-

ions of our statute, relating to the recording of deeds, should be nullified, or its vitality impaired." *Hart* v. *Chalker*, 14 Conn. R., 81.

Judgment for the defendants.